No. 30,724.

HELEN VAN PELT, *Appellee*, v. THE RICHARDS PAINT AND PAPER
COMPANY and GEORGE IRVINE, *Appellants*.

(14 P. 2d 632.)

Opinion filed
October 8, 1932.

*C. W. Burch, B. I. Litowich* and *La Rue Royce*, all of Salina, for the· appellants.

*William S. Norris*, of Salina, and *Allen Meyers*, of Topeka, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: Plaintiff recovered a judgment for $16,125 for personal injuries sustained in an automobile casualty. Defendants have appealed and contend that the court erred in not sustaining their motion to strike out the testimony of certain of plaintiff's witnesses and that the verdict is excessive.

The case was here before (*Van Pelt v. Richards Paint & Paper Co.*, 132 Kan. 581, 296 Pac. 737), when a judgment for $18,000 in plaintiff's favor was reversed because plaintiff's counsel persisted in injecting into the trial before the jury the inference that defendants were protected by indemnity insurance and because of certain evidence erroneously admitted. It was then ruled that the errors requiring reversal did not go to the primary question of liability, and that the new trial should be limited to the extent of plaintiff's injuries and the amount she should recover.

At the trial from which this appeal was taken eight physicians, called as witnesses by plaintiff, testified about her condition from examinations or treatments of her. As to four of those witnesses no complaint is made by appellants of their testimony. The other four

witnesses, on cross-examination by counsel for defendants, stated in substance that they based their opinion of plaintiff's condition, its extent and duration, upon personal examination of her, the examination of X-ray pictures taken of her, and their knowledge and skill gained from experience and from reading medical books and records, and the history of the case. At the conclusion of all of the evidence on behalf of plaintiff, defendants moved the court to strike out the testimony of these four physicians for the reason that their testimony as to plaintiff's condition, its extent and duration, was based in part on the history of the case. The trial court overruled the motion. Appellants complain of that ruling.

It is well settled by former decisions of this court, which accord with the general rule, that a physician may not testify as to what a patient said in respect to the past history of the case, or the cause or duration of the injury. Neither can he give an opinion based partially upon his personal examination and partially upon what the patient told him in reference to the past history of the case, and also upon statements of third persons in reference thereto. (See *A. T. & S. F. Rld. Co. v. Frazier,* 27 Kan. 463; *Telegraph Co. v. Morris,* 67 Kan. 410, 73 Pac. 108; *Betterment Co. v. Reeves,* 73 Kan. 107, 84 Pac. 560; *Ballard v. Railway Co.,* 95 Kan. 343, 148 Pac. 764; *Hill v. Railroad Co.,* 113 Kan. 489, 491, 215 Pac. 310; *Priest v. Life Insurance Co.,* 116 Kan. 421, 427, 230 Pac. 529; *Murphy v. Edgar Zinc Co.,* 128 Kan. 524, 278 Pac. 764; *Lefebvre v. Western Coal and Mining Co.,* 131 Kan. 1, 289 Pac. 456.)

This general rule is necessary to prevent the admission of self-serving declarations of patients, or of statements made by him or others not under oath, which would be hearsay, and also that the defendant in the action, the jury and the trial court have a right to know how much of the opinion of the physician is based upon such self-serving declarations and hearsay statements, and how much of it is based upon his own examination of the patient, or established by X-ray pictures or other competent evidence. The real question before us is whether the testimony of the witnesses sought to be stricken out violated this rule at all, or to the extent that the judgment appealed from should be reversed. It is not every reference by a physician who is a witness to the history of the case that requires reversal of judgment. (*State v. Keester,* 134 Kan. 64, 4 P. 2d 679.) While there are some differences in the testimony of the four witnesses complained of, the testimony of each of these witnesses, taken as a whole, discloses quite clearly that only two things

in the way of the history of the case were considered by any of them. First, that plaintiff had sustained a severe personal injury. Naturally that was disclosed by their examination of plaintiff, and the fact that the witness may have learned the fact from some other source neither added to nor detracted from the weight of his evidence. On this trial it was a formerly adjudicated question in the case and was not an issue. Testimony of physicians called as witnesses by defendants disclosed that their examination of her revealed that she had suffered a severe personal injury. The fact that the witnesses regarded that item of history is not objectionable.

The second point regarded as a part of the history of the case was whether plaintiff was suffering pain at the time examinations were made or treatments given her by the witnesses. Of course, pain cannot be seen by a physician, nor felt by him, nor is it disclosed by X-ray pictures; but it does not necessarily follow that an examination or treatment of a patient by a witness does not disclose that the patient has pain. The nature of plaintiff's injury, as disclosed by the examination, was such that she necessarily had or might have pain. To some of the witnesses the fact that plaintiff was suffering pain was disclosed by her appearance and by her reflexes. To one or two of them she complained of having pain. These complaints only tended to confirm opinions which had been reached by the examination of the patient and her condition. Stated in the most favorable way for appellants, there was very little in the testimony of any of these witnesses which could have entered into their opinions, as testified to by them, which was based upon any history of the case objectionable under the rule recognized and applied in the cases above cited. No objection was made to the testimony of any of these witnesses while they were on the witness stand, nor was any motion made to strike out any portion of their testimony, nor were they asked to segregate in any way any part of their judgment based upon any statement of plaintiff's with respect to pain. Certainly most of the testimony of these witnesses was competent in any event. The motion to strike out the entire testimony of each of them, made at the close of plaintiff's evidence, was not well taken and was properly overruled.

Appellants complain of the amount of the verdict. One of the grounds of the motion for the new trial was that the verdict was excessive. That ground was not argued on the hearing of the motion, but the court, having tried the case twice, specifically found

that the verdict was not excessive. In actions such as this, where there are bodily injuries, some of which are permanent and which include future as well as past pain and suffering, it is difficult for this court to deal with the question of excessiveness of verdict; and where the verdict has been approved by the trial court, unless the amount of the verdict is so great as to shock the conscience of this court, in view of all the facts shown by the evidence in the case, the verdict should not be modified or set aside. (*Fenn v. Kansas Gas & Electric Co.*, 118 Kan. 131 to 134, 234 Pac. 77, and cases there cited.) While it is true that the verdict in this case is large, it is also true that plaintiff's injuries were severe, and some of them are conceded to be permanent. That she has suffered great pain in the past, and, under evidence which the jury cannot be criticized for believing, will continue to suffer great pain in the future, are facts well established by the evidence. Plaintiff was injured August 28, 1929. She was severely injured on many parts of her body, especially on the back near the head. She was unconscious for about two days, and regained consciousness at intervals for several days, when she was moved from the hospital to a hotel, where she was treated until September 19, when her physician permitted her to go in an automobile to her home at Manhattan, a distance of about one hundred miles. She was there confined to her bed most of the time, received some medical treatment for a few weeks, when additional X-ray photographs were made which disclosed that the first cervical vertebra was broken at the back and in front. The broken parts in front had spread, one of them being nearly a quarter of an inch from the center and the other nearly half an inch, leaving a space between them of almost three-quarters of an inch. This vertebra is in the shape of a ring, with a surface on top to support the occipital bone at the base of the skull. Through the opening in this ring pass the spinal cord and nerves as they leave the brain. The result of this injury was to let the head settle somewhat, compressing or cramping the nerve tissues. It also destroyed, or seriously limited, the rotary and other head movements. A physician, expert on those matters, designed a brace-type collar to support a part of the weight of the head and to prevent further injury by a sudden jerk or jar, which the evidence disclosed might prove fatal or result in paralysis. She wore this brace constantly for eighteen months, but at the time of the trial wore it only when she was likely to get a jar or jerk. Some physicians thought she should continue

to wear it all the time. The trial from which this appeal was taken was held about two years after the injury. There is evidence that since the injury plaintiff has not been without pain, and much of the time it was very severe; that she is unsteady on her feet and needs to walk with care; that the nerves leading to her arms and chest are affected, resulting in pain, impaired movement, and some atrophy; that she has been unable to sleep at night without a strong sedative, and then frequently her sleep is broken; that she has been unable to comb her hair or brush her teeth, cut her food, feed, bathe or clothe herself without assistance, and has been utterly incapacitated to perform any of her household duties. There was testimony from the physicians that she has made all the progress or improvement that can be expected. Under this evidence we cannot say that the verdict is so excessive that a remittitur should be required.

The judgment of the court below is affirmed.

BURCH, J., not sitting.